# Milbank

**JED SCHWARTZ**
*Partner*
55 Hudson Yards  |  New York, NY 10001-2163
T: +1 (212) 530-5823
jschwartz@milbank.com  |  milbank.com

May 30, 2025

**VIA ECF**

Hon. P. Kevin Castel
United States District Judge, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *Anvil Trust et al. v. Ernst & Young, et al.*, 24-cv-9731 (PKC)

Dear Judge Castel:

      We represent Defendants Ernst & Young ("EY"), Ernst & Young Middle East, Ernst & Young Middle East (Abu Dhabi Branch) and Anthony O'Sullivan ("Defendants") in the above-captioned matter. The Court has scheduled a conference for June 25, 2025, at 11:00 a.m. In advance, and pursuant to the Court's Individual Practices, we request leave to file a motion to dismiss Plaintiffs' Complaint on the multiple, independent grounds discussed herein.

      *First*, Plaintiffs' federal claims are time-barred under both the applicable statutes of repose and limitations. Plaintiffs allege that they relied on alleged misstatements by one or more Defendants when purchasing shares of Brooge Petroleum and Gas Investment Company FZE ("Brooge"). But Plaintiffs' federal claims are subject to a five-year statute of repose, 28 U.S.C. § 1658(b)(2), which "begins running from the date of each alleged statement or omission," not the date of the purchase, and "is not subject to equitable tolling." *Sjunde AP-Fonden v. Gen. Elec. Co.*, 417 F. Supp. 3d 379, 391 (S.D.N.Y. 2019). All of the alleged misstatements Plaintiffs claim to have relied on pre-date December 17, 2019, *i.e.*, were made more than five years before Plaintiffs commenced this action. Compl. ¶¶ 98, 108, 116. Accordingly, those claims are barred by the statute of repose.

      Separately, Plaintiffs' federal claims are time-barred under the applicable two-year statute of limitations. 28 U.S.C. § 1658(b)(1). The limitations period for federal securities claims begins to run when a "reasonably diligent plaintiff" would have discovered the facts constituting the alleged violation. *City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011). Here, based on Plaintiffs' allegations, that was no later than August 17, 2022, when Brooge stated in an SEC filing that the financial statements that Defendant EY audited[1] (for years 2018, 2019, and 2020) "should no longer be relied upon." Compl. ¶ 100. But Plaintiffs did not bring this action until more than two years later, in December 2024. The Complaint does not allege that Plaintiffs learned new facts about Defendants' conduct in the period between the August 2022

---

[1] The audit opinions at issue were signed and issued by the Abu Dhabi branch of EY.

MILBANK LLP

NEW YORK  |  LOS ANGELES  |  WASHINGTON, D.C.  |  SÃO PAULO  |  FRANKFURT
LONDON  |  MUNICH  |  BEIJING  |  HONG KONG  |  SEOUL  |  SINGAPORE  |  TOKYO

Hon. P. Kevin Castel
May 30, 2025                                                                                                                   Page 2

disclosure and the filing of their Complaint. It does allege that PwC, the auditor of Brooge that replaced Defendant EY, resigned in January 2023. But PwC's resignation cited "illegal acts" ***at Brooge***—not EY (or any Defendant). The Complaint also incorporates the SEC's December 2023 fraud charges against Brooge. But the SEC explicitly concluded that Brooge management actively "concealed the inflated revenues from the company's outside auditors, E&Y and PwC," and deliberately fed them "false audit evidence." *In re Brooge Energy Ltd.*, Securities Act Release No. 11260, Exchange Act Release No. 99228, 2023 SEC LEXIS 3631, at *13 (Dec. 22, 2023). So that cannot save Plaintiffs' claims.

*Second,* Plaintiffs have not sufficiently alleged that the Court has personal jurisdiction over Defendants with respect to their common law claim. Specific personal jurisdiction must be established as to each claim, and here, Plaintiffs cannot establish that any Defendant has sufficient minimum contacts with the forum ***and*** that the litigation arises out of or is related to the Defendants' contact with the forum. *See Keep on Kicking Music, Inc. v. Universal Music Publ'g Grp.*, 2024 WL 3675936, at *3-4 (S.D.N.Y. Aug. 5, 2024). The Complaint has virtually no allegations regarding conduct in New York, and none of the few allegations that do appear connect any alleged wrongdoing by Defendants to New York. Compl. ¶¶ 25, 26, 28, 89.

*Third*, Plaintiffs' federal and state claims fail because Plaintiffs do not plausibly allege falsity. For example, Defendant EY's audit opinions were statements of opinion.[2] *Querub v. Moore Stephens Hong Kong*, 649 F. App'x 55, 58 (2d Cir. 2016) ("Audit reports" are quintessential "statements of opinion," as they involve "considerable subjective judgment"); *see also In re Tremont*, 703 F. Supp. 2d 362, 372 (S.D.N.Y. 2010) ("essentially the same" fraud standards apply under state law). But Plaintiffs have failed to plead facts creating a plausible inference that EY did not subjectively believe its opinions, or that EY's audit opinions omitted material facts about its inquiry that "conflict with what a reasonable investor would take from the statement [of opinion] itself." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 645 F. App'x 72, 75 (2d Cir. 2016). Rather, Plaintiffs rely on hindsight and conjecture, assuming EY must have "recklessly ignored" Brooge's fraud, Compl. ¶ 65, without alleging any specific facts regarding the audit process or why EY must have known of the fraud when the SEC's findings (incorporated into the Complaint) show that Brooge provided false audit evidence and took other steps to conceal a fraud from EY.[3]

*Fourth*, Plaintiffs fail to allege particularized facts giving rise to a "strong inference" of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). This pleading hurdle is "particularly stringent" for auditors. *Special Situations Fund III QP, L.P. v. Deloitte*

---

[2] No other Defendant can be held liable—they did not issue the audit opinions and so are not the "maker" of the statements. *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 180 (1994) (Section 10(b) does not permit private suits against alleged aiders and abettors).

[3] In addition, for certain of the alleged misstatements, the Complaint fails the basic particularity requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1). *See, e.g.*, Compl. ¶ 92 ("Over the following weeks, representatives of the EY Defendants . . . exchanged several communications with Cannon . . . .").

Hon. P. Kevin Castel
May 30, 2025                                                                                                    Page 3

*Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 426 (S.D.N.Y. 2014). "Allegations of a negligent or 'shoddy audit'" are not enough. *Id.* at 427. Plaintiffs must allege facts showing the audit was "so deficient that [it] amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful." *Id.*; *see also id.* at 446 (stating, in a case against an auditor, that "[t]he scienter element for common law fraud is essentially the same as that under federal securities laws").

  Plaintiffs do not offer facts from which the Court could draw the required inference. Rather, they offer conclusory assertions that Defendants worked with Brooge to "develop[ a] scheme to justify the lack of documented payments from Coral, Brooge's sole customer," "did not question the purpose of" certain payments, and gave false explanations for delays in sending Brooge's audited financial statements to Cannon. Compl. ¶¶ 78, 84, 86-87. Those allegations do nothing to overcome the much more compelling inference—and the one consistent with the conclusion reached by the SEC itself—that if there was a fraud, rather than being reckless or complicit, Defendants were victims of the fraud too. *See* In re Brooge Energy Ltd., 2023 SEC LEXIS 3631, at *1; *see also City of Omaha Police and Fire Ret. Sys. v. Evoqua Water Tech. Corp.*, 450 F. Supp. 3d 379, 390 (S.D.N.Y. 2020) (in deciding a motion to dismiss, the court may consider documents "attached to or incorporated by reference in the complaint," and "integral to and relied upon in the complaint").

  *Fifth*, the Complaint fails to plead loss causation. *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 157 (2d Cir. 2007). Here, Plaintiffs are proceeding on a corrective disclosure theory, and accordingly must "prove a disclosure of the fraud by which the available public information regarding the company's financial condition was corrected." *Microbot Med., Inc. v. Mona*, 688 F. Supp. 3d 88, 113 (S.D.N.Y. 2023). Any alleged misstatements by any Defendant were corrected by no later than August 17, 2022, when Brooge announced that the financial statements that Defendant EY had audited could no longer be relied upon. But Plaintiffs allege no negative stock price reaction in response (and, in fact, Brooge's stock rose the next trading day). *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000) ("the district court may take judicial notice of well-publicized stock prices" in determining a motion to dismiss). Plaintiffs instead attempt to pin their alleged losses on the stock decline following the December 22, 2023, SEC Order against Brooge. Compl. ¶ 101. But the December 2023 disclosure was not corrective of EY's audit opinions, which had been publicly disavowed more than a year earlier. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 513 (2d Cir. 2010) ("Because appellant failed to demonstrate any new information in [the alleged collective disclosure] regarding [defendant's] alleged fraud, appellant has failed to show a price decline due to a corrective disclosure.").

  *Finally*, compelling grounds exist for dismissal under *forum non conveniens*. All parties are foreign. The alleged fraud centers on a Dubai-based company and conduct that occurred in the United Arab Emirates, Bahrain, and the United Kingdom. There is virtually no connection to the United States and adequate alternative fora exist. This dispute plainly belongs in one of those jurisdictions and not in New York. Even though *forum non conveniens* is not a Rule 12(b) defense, in the interest of judicial economy, Defendants intend to raise this issue at the outset of this case.

  Defendants propose the following briefing schedule for Defendants' motion: Defendants to file their motion 30 days after the conference (July 25, 2025); Plaintiffs to oppose within 60 days (September 23, 2025); and Defendants to reply within 30 days (October 23, 2025).

Respectfully submitted,

*/s/ Jed M. Schwartz*

Jed M. Schwartz

cc:   All counsel of record (via ECF)